UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mary Helen Stanley,<br><br>   Plaintiff,<br><br>vs.<br><br>Kilolo Kijakazi,[1] Acting Commissioner of<br>Social Security Administration,<br><br>   Defendant. | Civil Action No. 5:21-02471-KDW<br><br><br>ORDER |

  This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff Mary Helen Stanley ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the undersigned affirms the Commissioner's decision for the reasons discussed herein.

I. Relevant Background

  A. Procedural History

  On January 2, 2019, Plaintiff filed an application for DIB. Plaintiff alleges a disability onset date of October 15, 2019. Tr. 252. Her claim was initially denied on July 1, 2019, and again upon reconsideration on September 19, 2019. Tr. 98; 99-11. Plaintiff filed a written request for a hearing on September 23, 2019. Tr. 126. Plaintiff appeared for two hearings: the first hearing was held on

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the named Defendant in this action.

May 6, 2020 and the second hearing was held on August 12, 2020. Tr. 31-85. At the first hearing, Plaintiff, her attorney, a vocational expert and a witness appeared. Tr. 57. At the second hearing, a second vocational expert provided testimony. Tr. 32. On December 11, 2020, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Tr. 25. Plaintiff requested a review of the decision by the Appeals Council, and on June 2, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on August 6, 2021. ECF No. 1.

B. Plaintiff's Background

Plaintiff was born on August 24, 1966. Tr. 252. Plaintiff alleges her disability onset date is October 15, 2018. Tr. 252. In a Disability Report dated January 10, 2019, Plaintiff lists her height as 5 feet 2 inches and her weight as 180 pounds. Tr. 256. She completed the twelfth trade in 1984. Tr. 257. Plaintiff indicated she suffers from congestive heart failure or chronic heart failure, hypertension, arthritis in her back and knees, and a stroke. Tr. 256. Prior to when she stopped working, Plaintiff worked for approximately six months as a cashier at a supermarket and approximately three years as a cashier at a dollar store. Tr. 257. Plaintiff filled out a mobility questionnaire, dated February 12, 2019 and signed March 4, 2019, wherein she describes having bad chest pain due to a stroke, speech problems, and difficulty walking without support. Tr. 264. In a mobility questionnaire she signed on February 15, 2019, Plaintiff indicates she has headaches due to her stroke, nerve damage, chest pain, very high blood pressure, and anxiety attacks. Tr. 280. In a Work History Report, signed February 15, 2019, in addition to her previous employment as a cashier at a supermarket and a dollar store, Plaintiff lists a previous job as a cashier at Grand Central Station from August 2005 until the spring of 2013. Tr. 267.

Plaintiff's husband, Thomas McCormick, filled out a Function Report on Plaintiff's behalf, dated March 14, 2019, indicating Plaintiff lives in a home with him. Tr. 282. Within the Function Report, Mr. McCormick notes Plaintiff is limited in her ability to work due to very high blood pressure, the inability to talk due to nerve damage, and the inability to walk or stand due to a nerve issue. Tr. 282. He further indicates Plaintiff is unable to leave the home alone due to issues with balance, and due to her inability to drive as a result of judgment issues with distance. Tr. 285. Mr. McCormick checked the form to indicate Plaintiff uses a walker to ambulate. Tr. 288.

In a subsequent Disability Report, dated July 9, 2019, Plaintiff indicates that her medical conditions have gradually gotten worse and cause her greater limitations since the date of her last report. Tr. 298. Within the Disability Report, Plaintiff further states that everything she does has become more difficult as a result of the symptoms she suffers from daily. Tr. 301. In a subsequent Function Report, signed on August 15, 2019 by her husband Thomas McCormick, Plaintiff or her husband indicated that her illnesses affected nearly every function listed, including but not limited to lifting, walking, sitting, completing tasks, talking, standing, and reaching. Tr. 312. Plaintiff attended and gave testimony at two hearings, one held on May 6, 2020 and one held on August 12, 2020.

    1.    Plaintiff's Testimony

At the hearing held on May 6, 2020, Plaintiff appeared via telephone. Tr. 61. Her attorney inquired about her previous employment as a cashier. Plaintiff testified that she usually stood for at least seven of the eight hours of her work shifts. Tr. 64. Plaintiff testified that in November of 2018 she suffered a stroke, which made it difficult for her to speak. Tr. 65.[2] Plaintiff also has issues with her left leg, and she has continued to use a walker since her stroke. *Id*. Plaintiff testified that she is unable to stand for ten minutes or walk thirty feet without her walker. *Id*. at 65-66. Plaintiff testified that she also suffers from congestive heart failure, which results in chest pain when resting, as well

---

[2] Medical records suggest Plaintiff suffered a stroke in October 2018. Tr. 423, Ex. 1F.

3

as shortness of breath. *Id*. at 66. Plaintiff testified that she suffers from low energy levels and usually takes a least one forty-five minute nap throughout the day. *Id*. at 67. Plaintiff further testified that she is unable to lift a full gallon of milk and carry it fifteen feet due to issues with her heart, as well as the stroke. *Id*. Plaintiff testified that in addition to these medical ailments, she suffers from arthritis in her back and hands and pain in her lower back that moves down her legs. *Id*. at 68. As a result, Plaintiff testified that she is unable to sit in a desk chair for longer than five minutes without needing to stand up or change position. *Id*. Plaintiff further testified she is unable to stand up, even with the aid of a walker, for fifteen minutes. *Id*. Plaintiff testified that a typical day includes her lying down half of the day with her feet elevated. *Id*. at 69. Plaintiff reports she is unable to sleep without waking up in pain. *Id*. Plaintiff testified that due to the arthritis in her hands, she is unable to open a bottle of water, and she drops items she is holding. *Id.* at 72.

The ALJ asked Plaintiff to clarify the information related to her use of the walker. Specifically, the ALJ asked her how long she had used the walker, to which Plaintiff replied since she left the hospital (presumably after her stroke). *Id.* at 72-73. The ALJ then asked why the physician who examined Plaintiff on behalf of the Social Security Administration did not indicate she used a walker. *Id*. Plaintiff responded that her husband went into the office prior to her, indicated to her that the room would not be big enough to allow for the use of a walker, and therefore, she did not bring the walker in to her appointment. *Id*. at 73-74. The ALJ also asked Plaintiff about her hobbies, but she stated she did not have any. *Id.* at 75-76.

At the second hearing, held on August 12, 2020, Plaintiff testified that in the past fifteen years she has worked for two years as a cashier and four years as an assistant manager at a Family Dollar prior to working as a cashier. Tr. 39. Plaintiff also testified that she previously worked as a cook for the Oregon School District and a cashier at Winnsboro Petroleum Company. Tr. 39-40. Plaintiff testified that she is now unable to work because of her inability to be on time and wait on people. Tr.

4

40. Plaintiff testified that in the last two years, she has had three strokes, which have impacted her speech. *Id.* Plaintiff further testified she has difficulty walking and can walk approximately 15 minutes before needing a break. *Id.* at 41. Plaintiff testified that when she is able to walk, she relies on the use of a walker. *Id.* Additionally, Plaintiff has trouble when sitting down, and she is unable to drive. *Id.* at 41-42.

The ALJ asked Plaintiff about her medications. Plaintiff indicated that at least one of the medications she takes causes her heart to race. *Id.* at 45. Plaintiff further discussed her medical issues including a heart condition, high blood pressure, double vision, and the use of a loop recorder. *Id.* Plaintiff testified that bending down makes her dizzy, and she is unable to carry a full cup of coffee. *Id.* at 46. Prior to the onset of the COVID-19 pandemic, Plaintiff stated that she used to see friends, but this would cause her to become tired. *Id.* at 47-48.

2.     Testimony of VE

VE Lisa Carey testified at the first hearing on May 6, 2020. Initially, the ALJ asked the VE whether the inability to speak diminishes or decreases the available jobs in the economy. Tr. 63. In response, VE Carey explained that there are some jobs in the light and sedentary category that do not involve talking per the Dictionary of Occupational Titles (the "DOT"). Tr. 63. The VE described Plaintiff's past relevant work ("PRW") as (1) cashier II, DOT code 211.462-010, SVP 2, light exertional level, and (2) sales clerk, DOT code 290.477-014, SVP 3, light exertional level. Tr. 81. The ALJ asked the VE this hypothetical:

> ALJ: Assume we have a hypothetical person whose age ranges from 53 to, from 52 rather, to 53 who has any same disability and mental factors as the claimant who could do a full range of light work except this person - -
>
> ATTY: Hang on, your Honor, I think we lost you.
>
> ALJ: Three minutes at a time, a job that requires no more than occasionally talking, occasionally speaking - -
>
> A: Sir we lost you after light.

5

> Q: Say that again?
>
> A: We lost you after you said light.
>
> Q: I'll start over.
>
> ATTY: Light to occasional talking.
>
> ALJ: Occasionally talking, light, sit, stand option with the ability to change position once per hour for three minutes at a time, no more than occasional talking and needs an assistive device to ambulate, not on task but to ambulate. Are there any jobs?[3]

The VE responded that the following jobs would be available: (1) garment sorter, DOT code 222.687-014, SVP 2, light exertional level, with approximately 54,000 jobs in the national economy; (2) price marker, DOT code 209.587-034, SVP 2, light exertional level, with approximately 67,000 average jobs in the national economy; (3) mail clerk (non-postal), DOT code 209.687-026, SVP 2, light exertional level, with approximately 45,000 average jobs in the national economy.

At the second hearing, VE Ellen Levine was present and testified. After asking Plaintiff a few clarifying questions about her prior employment, the VE described Plaintiff's PRW as (1) cashier/supervisor, DOT code 211.137-010, SVP 7, light exertional work, and (2) cashier II, DOT code 211.462-010, SVP 2, light exertional level. *Id.* at 49-50. The ALJ asked the VE this hypothetical:

> Assume we have a hypothetical person . . . who has a twelfth grade education who has the same physical and mental health background as the claimant who can do a full range of light work, except that the person would need a sit, stand option with the ability to change position once per hour for three minutes at a time. She would need a job that requires occasional speaking and no job where speaking is a critical requirement, would need an assistive device to ambulate. Can she do any of her prior work and are there any other jobs?

Tr. 50. The VE asked whether the assistive device was a cane or a walker. Tr. 50. The ALJ responded that the assistive device would be a cane. *Id.* The VE then responded that the individual could not do past work due to the parameter on limited speech. *Id.* at 51. However, the VE testified that there were

---

[3] It appeared from the transcript that there were technological issues during the hearing, and thus the transcript reflects what could be transcribed.

6

other jobs in the economy that Plaintiff could perform, including: (1) small parts assembler, DOT code 706.684-022, SVP 2, light exertional level, with approximately 49,000 jobs in the national economy; (2) laundry folder, DOT code 369.687-018, SVP 2, light exertional level, with approximately 110,000 jobs in the national economy; and (3) inspector and hand packager, DOT code 559.687-074, SVP 2, light exertional level, with approximately 78,000 jobs in the national economy. Tr. 51.

Plaintiff's attorney asked the VE whether there were any jobs available if Plaintiff were ambulating with the assistance of a walker, rather than a cane, to which the VE responded that parameter would be job preclusive. Tr. 52. Upon further questioning, the VE also testified that the need to be off task 15% or more of the time would be job preclusive, as well as the need to be absent two or more days per month. *Id.*

According to the ALJ's decision, after the hearing, the record was left open to obtain additional evidence, and VE Levine provided evidence in response to vocational interrogatories after the hearing. Tr. 15, citing Ex. 33E. Plaintiff's representative apparently did not respond to comment on the interrogatory response provided by VE Levine or otherwise request a supplemental hearing. Tr. 15.

### 3.     Testimony of Witness

Plaintiff's husband, Thomas McCormick, testified at the hearing, as well. Mr. McCormick testified that he and Plaintiff had been married for twenty-four years. Tr. 76. Mr. McCormick testified that his wife is unable to work due to her speech impediment, her inability to stand for long periods, and she has a nervous condition. Tr. 77. He further testified that she has not driven a car since 2018. *Id.* at 78. He testified that he took her to her appointment that was set up by Social Security, and that he helped her a bit on the walkway. *Id.* at 79.

II.  Discussion

    A. The ALJ's Findings

In the decision dated December 11, 2020, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since October 15, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: hypertension, status post cerebrovascular accident, hyperlipidemia, obesity, arthritis, depression, and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work but with the following nonexertional limitations: the claimant should have the option to alternate between sitting and standing with the ability to change position once per hour for three minutes at a time. The claimant needs a cane to ambulate. The claimant can occasionally speak when speaking is not a critical function of a job. She should avoid complex decision-making, crisis situations, or constant changes in routine. The claimant can have frequent interaction with supervisors and coworkers, but can have only occasional interaction with the public. In addition, she can stay on task for two hours at a time.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 24, 1966 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CRF 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 4041569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2018, through the date of this decision (CFR 404.1520(g)).

Tr. 15-25.

### B. Legal Framework

#### 1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his

9

prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he or she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a),(b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his or her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he or she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

---

impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step Three).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III.    Analysis

Plaintiff presents one issue for review; that is, whether the ALJ failed to properly evaluate the opinion of the treating cardiologist Tejas Kumar Shah, M.D., as required by 20 CFR § 404.1520c. For claimants such as Plaintiff who filed for benefits after March 27, 2017, the Social Security Administration has enacted substantial revisions to the regulations governing the evaluation of opinion evidence.[5] Under these the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20 C.F.R. § 404.1520c(a), (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[6] Instead, ALJs consider medical opinions using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion, and the ALJ is not required to explain the consideration of the other three factors. *Id.* § 404.1520c(b)(2). The new regulations further deem certain evidence "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c). This includes statements on issues reserved to the Commissioner such as whether a

---

[5] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

[6] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 404.1513(a)(5).

12

claimant is disabled, is unable to work, or is incapable of doing past relevant work. 20 C.F.R. § 404.1520b(c)(3). Plaintiff argues that, despite this emphasis on supportability and consistency, the ALJ failed to properly address these factors when evaluating the opinion of treating cardiologist Dr. Shah. The Commissioner disagrees.

On April 16, 2020, Dr. Shah completed an assessment of Plaintiff. Tr. 375. Within the assessment, Dr. Shah provided several opinions. Some of these opinions included physical restrictions such as: (1) Plaintiff would be absent from work more than four days a month; (2) Plaintiff could occasionally lift less than 10 pounds and rarely lift 10 pounds; (3) Plaintiff could sit for five hours total and stand/walk for two hours total in an eight-hour work day; (4) Plaintiff requires the ability to sit or stand at will and would require the option to lie down or recline every two to three hours during the workday; (5) Plaintiff could occasionally reach, handle, finger, feel, push and pull bilaterally; (6) Plaintiff could never crawl or climb stairs, ramps, ladders, and scaffolds; (7) Plaintiff could rarely stoop, kneel, or crouch, and could only occasionally balance and rotate her head and neck; (8) Plaintiff could never work at unprotected heights, around moving mechanical parts, in extreme cold or heat, or around vibrations, dust, odors, fumes, pulmonary irritants, humidity, and wetness; and (9) Plaintiff requires a cane or assistive device to ambulate effectively and can only walk three to five feet without an assistive device. Tr. 736-37.

Plaintiff argues that the ALJ's assessment of this opinion frustrates meaningful review because the ALJ did not properly evaluate several of these limitations or otherwise determine what exertional level would be consistent with Dr. Shah's limitations. Plaintiff therefore argues the ALJ failed to build a logical bridge between the evidence and conclusions. Pl.'s Br. 6. Plaintiff further argues that this error is particularly harmful because the exertional limitations expressed by Dr. Shah would coincide with less than sedentary limitations, which would result in a finding of disability

13

under the grid rules. Pl.'s Br. 6. Finally, Plaintiff argues that the ALJ did not give any mention to the consistency of Dr. Shah's opinions with the other evidence of record. Pl.'s Br. 6.

In response, the Commissioner first points out that the revised regulations work to eliminate the so-called "treating source rule" which afforded deference to a medical opinion from a treating source, and instead instructs a reviewer to focus on factors such as supportability and consistency. Def.'s Br. 5. The Commissioner argues that, consistent with the revised framework, the ALJ adequately explained his rationale in assessing Dr. Shah's opinion. In so doing, it was clear the ALJ considered the evidence of record by indicating: (1) he relied upon the findings and opinion of Dr. Das; (2) he considered Plaintiff's treatment history status post cerebrovascular accident; (3) and he considered Dr. Shah's treatment records. Def's. Br. 8. In other words, the Commissioner argues that the ALJ clearly articulated his assessment of Dr. Shah's opinion, removing the need to guess at his analysis.

In explaining the RFC determination, the ALJ first discussed the treatment notes of Dr. Shah. The ALJ explained that Plaintiff consulted with Dr. Shah, a cardiologist, for several visits after discharge from a hospital visit for treatment related to strokes. Tr. 21. Dr. Shah's notes reveal that Plaintiff did not report chest discomfort, palpitations, syncope or the like at her follow-up visit in October 2018. Tr. 21, citing Exhibit 2F. The ALJ noted that in November of 2018, Plaintiff presented to Dr. Shah with a normal gait and was able to exercise. Tr. 21, citing Ex. 3F. The ALJ then noted that the next visit to Dr. Shah was in August of 2019, more than a year after he initially treated Plaintiff. At that visit, the ALJ found significant that Plaintiff's loop recorder found no significant abnormality, and Plaintiff walked with a normal gait and was able to exercise. Tr. 21, citing Exhibit 5F. The ALJ also discussed a November 2019 visit, where Plaintiff presented with no chest discomfort, no stroke-like symptoms, and no symptoms attributable to valvular heart disease. Tr. 21,

14

citing Ex 6F. The ALJ also noted that Dr. Shah again found Plaintiff walked with a normal gait and demonstrated no signs of tenderness or edema. Tr. 21.

Approximately six months later, Dr. Shah completed a statement, which was dated April 2020. This is the opinion that Plaintiff argues the ALJ failed to properly evaluate. The document, entitled Treating Source Statement, appears to be a form document. Dr. Shah indicates that he has treated Plaintiff since 2018.[7] Dr. Shah checked a box indicating Plaintiff would be "off task" for more than 25% of the workday, which is characterized as the amount of the workday that a patient's symptoms would be severe enough to interfere with attention and concentration. Tr. 735. Dr. Shah indicated again, by checking a box, that Plaintiff could only maintain attention and concentration for less than 30 minutes before needing a break due to her symptoms. Tr. 735. Dr. Shah further indicated Plaintiff would be absent from work more than four days of the month as a result of her impairments or treatment. *Id.* Dr. Shah also opined as to the amount of weight Plaintiff could lift or carry. Tr. 736. In response to a question asking the physician to identify the particular medical or clinical findings that support the assessment of limitations, Dr. Shah wrote "Pt had stroke." Tr. 736. Dr. Shah additionally indicates that Plaintiff could stand/walk for 2 total hours in a workday and sit for 5 total hours. *Id.* In response to a question asking the physician to identify the particular medical or clinical findings that support the assessment of limitations, Dr. Shah wrote "acute CVA." Tr. 736. Dr. Shah indicated Plaintiff would require the use of a cane to ambulate effectively. *Id.* Dr. Shah provided several physical limitations related to Plaintiff's ability to effectively use her hands and feet. Tr 378. He opined that as to almost all of the environmental factors listed on the form (i.e., unprotected heights, moving mechanical parts, humidity and wetness, dust/odors/fumes/pulmonary irritants, extreme cold,

---

[7] The undersigned notes that the Commissioner points out that after following up with Dr. Shah in 2018 post hospitalization, Plaintiff did not see Dr. Shah again until August 2019, and then again in November 2019. Def.'s Br. 3.

15

extreme heat, and vibrations), Plaintiff would not be able to work in an environment with these factors. Tr. 738.

The ALJ assessed this opinion, finding it to be partially persuasive regarding the use of a cane, which the ALJ explained was documented within Dr. Shah's treatment records. Tr. 22. However, the ALJ determined that the exertional limitations related to Plaintiff's ability to maintain concentration and remain on task were unsupported by both Dr. Shah's own findings, as well as the other documentary evidence within the record. Tr. 22. In the next paragraph, the ALJ explained that when Plaintiff consulted with other physicians, Plaintiff denied issues with concentration. Tr. 22. The ALJ then discusses the consultative examination of Sushil K. Das, M.D. (referred to in the ALJ's decision as Dr. Das Sushi), dated May 2019, who assessed Plaintiff, including physical limitations, and found that Plaintiff could perform many of the same tasks that Dr. Shah checked on his form Plaintiff could not. Tr. 22. For example, the ALJ includes within his opinion that Dr. Das found Plaintiff possessed full muscle strength bilaterally in both the upper and lower extremities, she walked without much difficulty, she could successfully move her fingers, hands and arms, and she could perform tandem walking, as well as heel to shin tests. Tr. 22. The ALJ found significant that Dr. Das opined that Plaintiff could "successfully perform any job where she does not have to talk" and noted that this opinion is based on the physician's personal evaluation of the Plaintiff and supported by his findings. Tr. 22.

While ALJs must generally explain how they reconciled conflicting evidence enough to facilitate judicial review, ALJs are not required to refer to every piece of evidence contained in the record. *Reid v. Commissioner*, 769 F.3d 861, 865 (4th Cir. 2014). The regulations provide that an ALJ should provide "source-level articulation" of medical opinions, noting that it is not feasible to articular how each factor was considered for all medical opinions. 20 C.F.R. § 404.1520c(b)(1). The more relevant objective medical evidence and supporting explanations by a medical source are to an

16

opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Additionally, the more consistent a medical opinion is with evidence from other medical sources (and nonmedical sources), the more persuasive a medical opinion will be. 20 C.F.R. § 404.1520c(b)(2). In reviewing the ALJ's decision, the undersigned finds that the ALJ adequately reviewed and considered the medical opinion of Dr. Shah, including as it pertains to supportability and consistency. For example, it is clear to the undersigned that the ALJ determined that Dr. Shah's statement, which reflects an inability on the part of Plaintiff to perform a variety of activities requiring physical exertion, is unsupported by his own medical findings, as well as the medical findings of at least one other physician, who personally evaluated Plaintiff. Tr. 22. The ALJ contrasted this with the finding that Plaintiff would need to use a cane, which the ALJ explained *was* supported by the treatment records.

Further, the ALJ first discussed all of Dr. Shah's treatment records, which generally supported a finding that Plaintiff walked with a normal gait and was able to exercise, before considering Dr. Shah's opinions that she was greatly limited in her ability to perform physical functions, including walking. Indeed, Dr. Shah's own statement does not provide any support for his limitations assessments beyond the fact that Plaintiff had a stroke. However, Dr. Shah's treatment and medical notes are dated subsequent to Plaintiff's hospitalization for this medical condition. The ALJ further contrasted both Plaintiff's medical records regarding her ability to concentrate, as well as the physical examination of Dr. Das to show that Dr. Shah's statement was inconsistent not only with his own medical records but with the documentary evidence as a whole, which was the other reason the ALJ gave for finding this opinion as partially persuasive. While Plaintiff argues this assessment is in error, Plaintiff does not advance an argument suggesting which records do support Dr. Shah's findings or which records were consistent with his opinion. Thus, the undersigned finds that, despite Plaintiff's argument to the contrary, the ALJ adequately considered and articulated his reasoning in assessing Dr. Shah's opinion.

IV.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned affirms the Commissioner's decision.

IT IS SO ORDERED.

September 12, 2022  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge